# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL JUSTICE**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**ASSOCIATED MATERIALS LLC**,<br><br>and<br><br>**PREMIUM BUILDING PRODUCTS LLC**,<br><br>Defendants. | CASE NO.<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Michael Justice, for his Complaint against Defendants Associated Materials LLC (Defendant AM) and Premium Building Products LLC (Defendant PBP) (jointly "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. (FLSA); and Ohio Revised Code (O.R.C.) § 4111.03(D) (Ohio Overtime Law) and § 4113.15 (Ohio Prompt Pay Act or OPPA) (collectively the Ohio Wage Laws). The following allegations are based on personal knowledge of Plaintiff's own conduct, and upon information and belief as to the conduct and acts of others:

## INTRODUCTION

1. This case challenges policies and practices of Defendants that violated the FLSA and the Ohio Wage Laws.

2. Plaintiff brings this case on behalf of herself and other similarly situated employees who may join this case pursuant to § 216(b).

3. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and other members of a class of persons, defined herein, who assert factually related claims under the Ohio Wage Laws (the Ohio Class).

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391.

6. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

7. During relevant times, Plaintiff has been an adult individual residing in this District and Division. Plaintiff was jointly employed by Defendants for approximately 5 years, until about February 28, 2019. He was a non-exempt hourly employee, at a rate of $14 per hour, performing duties in Defendants' business of window frame manufacturing. Plaintiff's consent to join is attached to this Complaint.

8. Defendant AM is an Ohio limited liability company with registered trade names that include "Associated Materials", "Alside", and "Alside Supply Center".[1] Defendant AM can be served through its Registered Agent: CT Corporation System, at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

---

[1] Defendant AM's website identifies itself as "Associated Materials Incorporated" and "Associated Materials Inc." *See* http://www.associatedmaterials.com/AboutUs.html (last viewed 2/21/2020). However, no such entity is registered with the Ohio Secretary of State. Plaintiff reserves the right to amend this complaint to add "Associated Materials Incorporated / Associated Materials Inc. should discovery reveal it is a proper party.

9. Defendant PMP is an Ohio limited liability company that can be served through its Registered Agent: New Dimension Accounting, at PO Box 161, Dalton, OH 44618.

10. At all relevant times, Defendants were individually and jointly enterprises engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

11. At all relevant times, Plaintiff and those similarly situated were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

12. At all relevant times, Plaintiff and those similarly situated were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

## FACTUAL ALLEGATIONS

### Defendants' as "Joint Employers"

13. At all relevant times, Defendants were individual and joint employers of Plaintiff and those similarly situated within the meaning of 29 U.S.C. § 203(d).

14. Defendants are in the business of manufacturing and selling building and construction products, including window frames and vinyl siding.

15. Defendant AM's headquarters is located at 3773 State Road, Cuyahoga Falls, Ohio 44223.

16. Plaintiff worked at Defendants' manufacturing facility located at 265 Congress Rd, West Salem, OH 44287.

17. This West Salem facility operates 24 hours a day, 7 days a week, with two shifts of approximately 150 persons per shift.

18. According to Defendant AM's website:

Associated Materials Incorporated, parent of several North American manufacturing and distribution operations, continues to revolutionize the exterior building products industry. With a multi-brand strategy, our products and services penetrate both the remodeling and new

3

construction markets in the continental United States and Canada, serving the needs of contractors, builders, remodelers and architects through our company-owned wholesale stores and select independent distributor partners. Vertical integration, combined with diverse products and customers, have fueled our growth and success for decades . . . Company-owned distribution, through our Supply Center Organization, links us directly to professional contractors, builders and other wholesale buyers and specifiers throughout North America – a highly unique competitive advantage. Bringing it all together is a dedicated Corporate Group providing comprehensive leadership and support – from human resources and engineering, to accounting and marketing – and everything in-between.[2]

19. According to Defendant AM's website, subsidiary companies include Alside.[3]

20. Plaintiff worked at Defendants' facility located at 265 Congress, West Salem, OH 44287.

21. This West Salem facility is called "Premium Building Products," but nearly all products manufactured here are Alside products, and customers refer to this location as "Alside."

22. Indeed, Defendant PMP's Facebook page lists its address as 265 Congress, West Salem, Ohio 442871, and lists its website as "http:///www.alside.com."[4]

23. Defendant AM's website lists several job openings located in West Salem, Ohio.[5]

24. The website www.alside.com/about identifies itself as being headquartered in Cuyahoga Falls, Ohio, with "over 3000 employees in its seven manufacturing facilities (Cuyahoga Falls OH; West Salem OH; Ennis TX; Cedar Rapids IA; Kinston NC, Bothell WA; and Yuma AZ)," and as being "[a] division of Associated Materials Incorporated (AMI)."[6]

---

[2] http://www.associatedmaterials.com/AboutUs.html (last viewed 2/20/2020).

[3] *Id*.

[4] https://www.facebook.com/pages/Premium-Building-Products/159403980758484 (last viewed 2/21/2020).

[5] http://www.associatedmaterials.com/careers.html (last viewed 2/21/2020).

[6] https://www.alside.com/about/ (last viewed 2/21/2020).

25. Defendant AM's LinkedIn page lists its company size as "1001-5000 employees," and states:

> Associated Materials is a leading manufacturer of professionally installed exterior building products. It is able to meet the wide variety of homeowner, architect, builder and contractor needs through its Alside, Gentek, Revere, Ultraguard, Preservation and Alpine brands. Materials include premium vinyl, aluminum and steel. Products include siding, windows, fencing, decking and railing. This unique position in the industry enables Associated Materials to gain a larger share of America's home exteriors.

26. At all times relevant, Defendants were individual and joint "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d) and corresponding provisions of the Ohio Wage Laws.

27. At all relevant times, Defendants shared operational control over significant aspects of the day-to-day functions of Plaintiff and others similarly situated.

28. At all relevant times, Defendants shared the authority to hire, fire and discipline employees, including Plaintiff and others similarly situated.

29. At all relevant times, Defendants shared the authority to set rates and methods of compensation of Plaintiff and others similarly situated.

30. At all relevant times, Defendants shared the authority to supervise and control the work schedules and employment conditions to a substantial degree of Plaintiff and others similarly situated.

31. At all relevant times, Defendants shared ultimate authority and control of employment records including payroll records that reflect, relate to, or otherwise record information pertaining to the hiring or firing, supervision and control of the work schedules or conditions of employment, or determining the rate and method of payment of the Plaintiff and those similarly situated.

32. At all relevant times, Defendants have mutually benefitted from the work performed by Plaintiff and others similarly situated.

33. At all relevant times, Defendants have not acted entirely independently of each other and have not been completely disassociated with respect to Plaintiff and others similarly situated.

34. At all relevant times, Defendants shared the services of Plaintiff and others similarly situated.

35. At all relevant times, Defendants acted directly or indirectly in the interest of each other in relation to Plaintiff and others similarly situated.

**Unpaid Pre-Shift Work**

36. At all relevant times, Plaintiff and those similarly situated were not exempt from the protections of the FLSA or the Ohio Wage Laws.

37. Defendants required Plaintiffs and those similarly situated to attend pre-shift meetings before they clocked in and that were not paid.

38. These meetings were integral and indispensable to the work performed by Plaintiff and other similarly situated employees

39. For example, the meetings were led by a supervisor, during which production sheets would be distributed. The supervisor leads the meeting, going over the sheet line by line to discuss how things are running, what issues might come up, and areas for improvement.

40. Employees from all production departments were expected to attend the pre-shift meetings, including but not necessarily limited to line operators, technicians, tool and die, and maintenance.

41. It is after the meeting that Plaintiff and those similarly situated clock in and report to their workstations. It is necessary and integral to the manufacturing and production jobs to attend these meetings before starting their work for the day.

42. These pre-shift meetings constitute an intrinsic element of the work activities of Plaintiff and those similarly situated and cannot be dispensed with if they are to perform their jobs as they were hired to do.

43. These pre-shift meetings are the first principle activity of Plaintiff and those similarly situated and constitute compensable work.

44. These pre-shift meetings occur each workday and last approximately 15 minutes. They are unpaid.

45. Defendants pay Plaintiff and those similarly situated only at the start time of their shifts.

46. Plaintiff and those similarly situated, as full-time employees, regularly worked over 40 hours in a workweek. For example, some workweeks were 60 hours at least, depending on production demands.

47. Additionally, even if there was no mandatory overtime due to production demands, Plaintiff and those similarly situated still typically worked 40 hours per week. Accordingly, the unpaid pre-shift meetings would constitute hours worked in excess of 40 for each of those weeks.

48. As a result of Plaintiff and other similarly situated employees not being paid for all hours worked, Plaintiff and other similarly situated employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

49. Defendants knowingly and willfully engaged in the above-mentioned violations of the FLSA by not paying Plaintiff and those similarly situated for work performed that is necessary and indispensable to their job duties of manufacturing and producing building products, including but not limited to as windows and vinyl siding.

7

50. Upon information and belief, Defendant failed to make, keep, and preserve records of the required and unpaid work performed by Plaintiff and other similarly situated employees.

## COLLECTIVE ACTION ALLEGATIONS

51. Plaintiff brings this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendants' unlawful conduct.

52. The class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> **All former and current hourly full-time manufacturing and production employees, who worked 40 or more hours in any workweek within three (3) years preceding the date of filing of this Complaint to the final resolution of this matter.**

53. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

54. These similarly situated employees are known to Defendants and are readily identifiable through Defendants' payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## OHIO CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and all other current or former persons employed by Defendant within the last two years ("Ohio Class") defined as:

> **All former and current hourly full-time manufacturing and production, and who worked 40 or more hours in any workweek within two (2) years preceding the date of filing of this Complaint to the final resolution of this matter**.

56. The class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to state the exact size of the potential Ohio Class but, upon information and belief, aver that it consists of at least 300 persons.

57. There are questions of law or fact common to the Ohio Class including: whether Defendants failed to pay its employees for the pre-shift meetings which were necessary and indispensable for them to perform their duties of manufacturing and producing building materials, and whether that resulted in the underpayment of overtime.

58. Plaintiff will adequately protect the interests of the Ohio Class. His interests are not antagonistic to but, rather, are in unison with, the interests of the Ohio Class members. Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and are fully qualified to prosecute the claims of the Ohio Class in this case.

59. The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the Ohio Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Ohio Class members to pursue their claims individually

would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Ohio Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

61. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

62. Defendants' practice and policy of not paying Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked over 40 each workweek violated the FLSA.

63. Defendants' failure to keep records of all hours worked for each workday and the total hours worked each workweek by Plaintiff and other similarly situated employees violated the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 516.2(a)(7).

64. By engaging in the above-mentioned conduct, Defendants willfully, knowingly, and/or recklessly violated provisions of the FLSA.

65. As a result of Defendants' practices and policies, Plaintiff and other similarly situated employees have been harmed in that they have not received wages due to them pursuant to the FLSA, and because such wages remain unpaid, damages continue.

## COUNT TWO
### (Ohio Overtime Violations)

66. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

67. Defendant's practice of not paying Plaintiff and other similarly situated employees for pre-shift meetings each day resulted in the underpayment of overtime in violation of Ohio law; and such overtime remains unpaid.

68. Additionally, the OPPA requires that Defendants pay Plaintiff and other similarly situated employees all wages on or before the first day of each month for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned by her during the preceding calendar month. O.R.C. § 4113.15(A).

69. Due to Defendants' joint violations of the Ohio Wage Law, Plaintiff and other similarly situated employees are entitled to recover from Defendants all unpaid compensation, and liquidated damages in the amount equal to 6% of unpaid overtime or $200 for each pay period that Defendants failed to pay overtime, whichever is greater. In addition, Plaintiff is entitled to reasonable attorneys' fees and costs and disbursements of the action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, and all similarly situated persons, collectively pray that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Enter judgment against Defendants, jointly and severally, and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S. C. § 216(b), and the Ohio Class;

C. Award Plaintiff and the putative class actual damages for unpaid wages;

D. Award Plaintiff and the putative class liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the putative class;

E. Award Plaintiff and the putative class pre-judgment and/or post-judgment interest at the statutory rate;

F. Award Plaintiff and the putative class attorneys' fees, costs, and disbursements; and

G. Award Plaintiff and the putative class further and additional relief as this Court deems just and proper.

Date: February 21, 2019	Respectfully submitted,

**NILGES DRAHER LLC**

*/s/ Robi J. Baishnab*
Robi J. Baishnab (0086195)
34 N. High St., Ste. 502
Columbus, OH 43215
Telephone:	(614) 824-5770
Facsimile:	(330) 754-1430
Email: rbaishnab@ohlaborlaw.com

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
7266 Portage Street, N.W., Suite D
Massillon, OH 44646
Telephone:	(330) 470-4428
Facsimile:	(330) 754-1430
Email: hans@ohlaborlaw.com
	sdraher@ohlaborlaw.com

*Counsel for Plaintiff*

**JURY DEMAND**
Plaintiff demands a trial by jury on all eligible claims and issues.

*/s/ Robi J. Baishnab*
Robi J. Baishnab (0086195)